# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7114 | **DATE** | 8/30/2000 |
| **CASE TITLE** | Perez vs. Warden Shumate | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, Court dismisses Perez' petition for writ of habeas corpus. Judgment is entered in favor of respondent. However, because Perez has made a "substantial showing of the denial of a constitutional right," albeit a harmless one, he is granted a certificate of appealability under 28 U.S.C. 2253(c)(2) on the issue of whether his constitutional rights were violated by the state trial court's consideration of Hodges' out-of-court statements.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 31 2000 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 33 |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | |
| OR6 | courtroom deputy's initials | 00 AUG 30 PM 5:33 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. SALETHEO PEREZ<br><br>Petitioner,<br><br>v.<br><br>WARDEN SHUMATE,<br><br>Respondent. | Case No. 98 C 7114 |

DOCKETED AUG 3 1 2000

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Before the Court is Petitioner Saletheo Perez's petition for habeas corpus, filed pursuant to 28 U.S.C. §2254. For the reasons set forth below, we deny the petition.

Perez was convicted of murder on a theory of accountability; he was sentenced to 40 years, as was his co-defendant, Gerald Hodges. Perez and Hodges were tried simultaneously in what was referred to by the Illinois Appellate Court as a "severed but simultaneous bench trial." *People v. Perez*, No. 1-98-1094, slip op. at 1 (Ill. App. Nov. 20, 1997). A few months before trial, Perez's motion to sever his case from that of Hodges was granted. On the first day of the trial, Perez and Hodges each waived their right to a trial by jury. Both Perez and Hodges testified at trial; but under the procedure of a severed trial, each was deemed to be testifying only in his own case.

On April 24, 1993, Perez attended a party located in Hodges' apartment building. There was a gang-related confrontation in the hallway of the building which then continued outside in a gangway. Hodges ended the confrontation by shooting a rifle into the crowd. Hodges, who was

New Breeds gang member, claimed he was acting in self-defense; a month earlier he had been assaulted by members of a rival gang – the Gangster Disciples – and members from these two rival gangs were in attendance at the April 24 party.

When Hodges fired into the crowd outside of the party, he shot and killed Seke Willis, who was a Gangster Disciple. Seke was at the party with his brother Tunde Willis, his girlfriend April Hummons, and her sister Heather Hummons. Tunde and Heather both testified that Perez was the protagonist in the confrontation both inside and outside the apartment building. At some point, Perez re-entered the building and returned with an assault rifle. Tunde and Heather both testified that they saw Perez hand the rifle to Hodges, who at that point was also a participant in the confrontation. Several people from the party tried to talk Hodges out of using the weapon, but after a minute or so, he raised the rifle, pointed it at the crowd and said something about "ending it now." Tunde and Seke ran, but before they made it inside the apartment building, Hodges fired, and Seke was hit.

Seke's girlfriend April never saw Perez with the rifle. By the time she made it outside, she saw Perez standing with Hodges, and Hodges leaning on a rifle. April ran when she saw Hodges pick up the rifle and heard him say something like "we going to end this now." April's sister Heather testified that when Hodges raised the rifle she heard Perez shout "shoot, shoot." Heather was the only prosecution witness who gave this testimony, and she was somewhat shaky regarding where and with whom she was standing. Tunde, who was standing with Seke, testified affirmatively that Perez did not yell "shoot" to Hodges. And April only heard Hodges yell something about ending this now.

Perez testified that after Rosario threatened to kill him in the hallway outside the party, he

went to Hodges' apartment where Hodges' brother gave him (Perez) a rifle. Perez then went back outside and Hodges took the gun from him. Once Hodges took the rifle, Perez said, he decided to leave; he wanted to fight Rosario with his fists, not with weapons. Perez denied encouraging Hodges to shoot. However, Hodges' statement to the police, which was introduced in Hodges' case, corroborated the prosecution's claim that Perez did encourage Hodges to shoot.

As his case had been severed from Hodges', Perez claims that Hodges' out-of court statement should not have been considered against him (indeed, this is the very reason why Perez sought a severance in the first place). At trial Perez's lawyer made a record to this effect. Yet despite the fact that the trials had been severed, the trial judge did not make separate findings of guilt as to Perez and Hodges. Rather, the judge appeared to rely on Hodges' statement as evidence against Perez. We will return to this point later in this decision.

We have extracted seven claims in total from Perez's petition and his reply brief: (1) he was not proven guilty beyond a reasonable doubt; (2) he received ineffective assistance at trial and on appeal; (3) his trip to Mississippi was improperly admitted as evidence of flight; (4) the prosecutor made an improper argument during closing; (5) the appellate court overstated the showing Perez had to make to establish that the trial judge improperly considered the statements of Perez's co-defendant Hodges in her findings against Perez; (6) the trial court erred when it failed to submit separate findings of guilt as to Hodges; and (7) his constitutional rights were violated when the trial court found him guilty in reliance on Hodges' out-of-court statements to the police, which were not properly admissible against Perez.

The first four of Perez's claims have been procedurally defaulted because he failed to raise them in his petition for leave to appeal (PLA) to the Illinois Supreme Court. *O'Sullivan v.*

*Boerckel*, 526 U.S. 838, 843-44 (1999). The default is excused, however, if Perez can demonstrate both cause for the default and prejudice resulting from it. *See Aliwoli v. Gilmore*, 127 F.3d 632, 634-35 (7th Cir. 1997). Perez says his *pro bono* appellate lawyers were ineffective for failing to raise these claims in his PLA. Ineffective assistance of appellate counsel claims are routinely advanced as cause for procedural default. However, the Supreme Court has recently held that an ineffective assistance of appellate counsel claim advanced as cause can itself be procedurally defaulted if it has not been raised in state court. *See Edwards v. Carpenter*, __ U.S. __, 120 S.Ct. 1587, 1591 (2000). The only opportunity Perez would have had to raise an ineffective assistance of appellate counsel claim would have been in a state post-conviction petition, but he chose not to file such a petition. Because he never raised an ineffective assistance of appellate counsel claim in state court, under the holding in *Edwards*, his "excuse" for the default of the claims raised in this court has itself been procedurally defaulted.

Default of the "excuse," however, can itself be excused if the petitioner can satisfy the cause-and-prejudice standard for that claim. *Id.* "Cause" has been defined as the unavailability of the factual or legal bases for a claim. *See United States v. Cowan*, No. 99 C 5777, 1999 WL 1023927, at *2 (N.D. Ill. Nov. 8, 1999) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1980) and *Cawley v. DeTella*, 71 F.3d 691, 696 (7th Cir. 1995)). Because of the unavailability of the legal basis for Perez's ineffective assistance claim, we believe he has established cause. *Boerckel* itself is what establishes the basis for a claim of ineffective assistance in omitting claims from a PLA, but the Supreme Court did not decide the case until June 1999, about eight months after

4

Perez's time for filing under the Illinois Post-Conviction Hearing Act had expired.[1] Prior to *Boerckel*, the law in this Circuit was that claims not raised in a discretionary appeal to the state's highest court were not procedurally defaulted so long as those claims were raised in the intermediary state appellate court. *See* discussion in *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1198-99 (7th Cir. 1998), *rev'd*, 526 U.S. 838 (1999). We also believe that Perez was prejudiced by his failure to make an ineffective assistance argument in his state post-conviction petition. Once *Boerckel* was decided by the Supreme Court, no state procedural remedy was available to him, as his time for filing a post-conviction petition had expired. Because Perez has shown cause and prejudice with regard to the procedural default of his claim of ineffective assistance of appellate counsel, we can decide whether that claim constitutes cause for the default of the claims he raises in this Court. This brings us right back to where we started before applying the *Edwards* double-default rule.

The Supreme Court has held that to assess whether a defendant's counsel was ineffective so as to constitute cause for a procedural default, we apply the two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984) (deficient performance and resulting prejudice). *Murray*, 477 U.S. at 488. Under that test, the failure to raise a particular claim in the PLA does not constitute ineffective assistance so long as the claims actually raised in the PLA were the petitioner's strongest. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of

---

[1] Perez's post-conviction petition was due sometime in October 1998, as the Supreme Court denied his PLA from his direct appeal in April 1998. *See* 725 ILCS 5/122-1(c) (post-conviction petition due six months after the Illinois Supreme Court denies petition for leave to appeal).

5

counsel be overcome."); *see also Smith v. Robbins*, __ U.S. __, 120 S.Ct. 746, 764-65 (2000) (explaining that it is difficult to establish deficient performance under *Strickland* based on the failure to raise a particular claim on appeal). Perez's appellate lawyers presented his strongest arguments in his PLA: first, whether the trial court relied upon Perez's co-defendant's inadmissible statement and testimony to convict him; and second, whether the court erred when it failed to make separate findings of guilt as to Perez and Hodges. Perez's appellate counsel's strategic decision to weed out the weaker arguments and to present only the strongest issues in Perez's PLA does not meet the "deficient performance" standard under *Strickland*. *Id*. We therefore find that Perez has not established cause for his procedural default.

Although the cause-and-prejudice test has not been satisfied, Perez's default could still be excused if he could show that failure to consider his claims would result in a fundamental miscarriage of justice. *Aliwoli*, 127 F.3d at 634-35. "[I]n an extraordinary case, where a constitutional violation *has probably resulted in the conviction of one who is actually innocent*, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496 (emphasis added). Perez has not raised the fundamental miscarriage of justice excuse for his default, but even if he had, he could not meet this rigorous legal standard. He was involved in the confrontation that ensued outside Hodges' apartment building. Perez testified that the confrontation began when Ted Rosario, a Gangster Disciple, had threatened to kill him while they were in the hallway outside the party. He then went inside and retrieved Hodges' rifle – the murder weapon – and handed it over to Hodges. Considering the law of accountability in Illinois, we cannot find that Perez has shown that our failure to review his claims would result in the conviction of one who is actually innocent. *See*

discussion *infra* at 12.

We now turn to Perez's remaining three claims, all of which relate to his "simultaneous severed bench trial" with Hodges. Perez first argues that the Illinois Appellate Court overstated the showing he had to make to demonstrate that the trial judge did indeed consider Hodges' statement in convicting him. Second, Perez argues that the trial court erred when it failed to make separate findings of guilt as to Perez and Hodges. The state says that these claims are not cognizable in a habeas corpus case because they are grounded in Illinois law, not the federal constitution. We agree. Because Perez did not describe these claims in his petition, we have relied on his PLA, where he raised these identical claims. It is clear from Perez's PLA that these claims are based solely on violations of state law. Before a federal court may overturn a conviction resulting from a state trial, it must be established not merely that the state's action was erroneous, but that it violated some federal constitutional right. *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); *see also Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) (it has long been "recognized that a 'mere error of state law' is not a denial of due process.") (citing *Gryger v. Burke*, 334 U.S. 728, 731 (1948)). For this reason we are precluded from reviewing the merits of these two claims.

This leaves Perez's last claim, which he has stated in constitutional terms, namely that his constitutional rights of confrontation and due process were violated because the trial court convicted him based on Hodges' out-of-court statement to the police. Unlike his other claims, this claim has not been procedurally defaulted. On direct appeal Perez argued that his due process and confrontation rights were violated by the trial court's reliance on Hodges' statement

7

in convicting him. The Appellate Court held that Perez failed to establish that the trial judge actually considered this evidence in convicting him. Perez then sought leave to appeal and brought the corollary to this claim, namely that the appellate court overstated the showing required to establish that the trial court actually considered inadmissible evidence against him. Though not raised specifically as a federal constitutional claim in his PLA, we believe that Perez raised an argument particular enough to put the Illinois Supreme Court on notice that he was asserting the violation of a right protected by the United States Constitution. *See, e.g., Pierson v. O'Leary*, 959 F.2d 1385, 1393 (7th Cir. 1992). We therefore turn to the merits of this claim.

Illinois law indulges in the presumption that in a severed but simultaneous bench trial, the trial judge has assessed the case of each defendant separately based on evidence properly admitted against that defendant. *E.g., People v. Schmitt*, 131 Ill. 2d 128, 137-38, 545 N.E.2d 665, 669 (1989). That presumption is rebutted, however, when the record affirmatively demonstrates that the court considered evidence outside of the particular defendant's case. *See United States ex rel. Plummer v. Neal*, No. 91 C 1257, 1992 WL 229579, at * 2 (N.D. Ill. Sept. 11, 1992) (citing *People v. Gilbert*, 68 Ill. 2d 252, 258-59, 369 N.E.2d 849, 852 (1977)). On direct appeal, Perez argued that the trial judge improperly considered Hodges' testimony against him in violation of his constitutional rights. The Illinois Appellate Court disagreed, finding that there was "[no] evidence in the record, including the trial court's findings, that the court considered irrelevant, incompetent evidence against [Perez]." *Perez*, No. 1-95-1094, slip op. at 6.

A state court's adjudication can be attacked in a habeas corpus case on the ground that it is based "on an unreasonable determination of the facts in light of the evidence presented." *See*

8

28 U.S.C. §2254(d)(2). But the petitioner bears an arduous burden of proof: state court findings are presumed correct unless the petitioner rebuts the presumption with "clear and convincing" evidence. *Id.* §2254(e)(1). Perez has met this burden of proof. The trial court expressly stated that it considered Hodges' out-of-court statement to corroborate the state's witnesses:

> In short, the court found that both the testimony of both the defendants to be incredible in light of the testimony of the State's witnesses, which were corroborated by the testimony of each other, *as well as certain statement of Defendant Hodges* and the statement of some of the defense witnesses.

*See Perez*, 1-95-1094, slip op. at 6 (quoting trial court's findings of guilt at R. O-168) (emphasis added).

The trial court's findings are clear; the judge did indeed consider Hodges' out-of-court statement to corroborate the state's case against Perez. There is no other way to interpret these findings. The judge was specific that Hodges' *statement(s)* – in other words his confession, not his testimony – corroborated the testimony of other state witnesses. This was not an inadvertent error; it was in Hodges' confession where he claimed Perez had said to shoot, corroborating the testimony of Heather Hummons – the only prosecution witness to testify that Perez shouted "shoot, shoot." We therefore find that Perez has demonstrated with clear and convincing evidence that the trial judge – the finder of fact – considered Hodges' out-of-court statement against him. We must now determine whether the trial judge's consideration of this evidence against Perez implicates any of his federal constitutional rights, and if it does, whether he is entitled to relief.

The Sixth Amendment right of confrontation is implicated when the confession of a non-testifying co-defendant incriminating the defendant is admitted into evidence, even where

9

the jury is instructed not to consider the statement against the defendant. *See Bruton v. United States*, 391 U.S. 123, 135-36 (1968). However, the Confrontation Clause is not implicated if the co-defendant's out-of-court statement falls within a firmly rooted hearsay exception or contains "particularized guarantees of trustworthiness" such that adversarial testing via cross-examination would add little to the statements' reliability. *See United States v. Robbins*, 197 F.3d 829, 839-40 (7th Cir. 1999) (citing plurality opinion in *Lilly v. Virginia*, 527 U.S. 116, 124-25 (1999)); *see also Cruz v. New York*, 481 U.S. 186, 193 (1987).

Hodges' statement to the police was not admissible against Perez, as there appears to be no firmly rooted hearsay exception that would apply here. *See, e.g., Lilly*, 527 U.S. at 128 ("the mere fact that one accomplice's confession qualified as a statement against his penal interest did not justify its use as evidence against another person."). Nor does Hodges' statement exude "particularized guarantees of trustworthiness" demonstrating that it was reliable. The statement was made after Hodges was arrested; he had a motive to minimize his own responsibility for Seke's murder. In addition, Perez did not have an opportunity to confront Hodges. Although Hodges did testify on his own behalf and was cross-examined by the prosecution, he was not cross-examined by Perez's counsel. Perez's counsel had no reason to cross examine Hodges, as the trial court had severed their trials. Because the trial judge held that Hodges' statements would not be admissible against Perez, Perez's counsel simply made a record to that effect; the trial judge did not contradict him. For these reasons, we conclude that Perez's Confrontation Clause rights were violated by the trial court's consideration of Hodges' confession.

Confrontation Clause violations are subject to harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In habeas corpus cases, federal courts generally apply

the harmless error standard set forth in *Kotteakos v. United States*, 328 U.S. 750 (1946). *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Lowery v. Anderson*, __ F.3d __, No. 99-3227, 2000 WL 1222124, at *5 (7th Cir. Aug 29, 2000). Under *Kotteakos*, a constitutional error requires reversal only if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos*, 328 U.S. at 776; *Brecht*, 507 U.S. at 637 (1993).

Some courts have held that where a state court has not conducted its own harmless error analysis on direct appeal, the stricter standard of *Chapman v. California*, 386 U.S. 18 (1967), applies even in a habeas corpus case. *See, e.g., Beets v. Iowa Department of Corrections Services*, 164 F.3d 1131, 1135, n. 3 (8th Cir. 1999). In this case, the Illinois Appellate Court did not conduct a harmless error analysis; rather, in dealing with Perez's insufficiency-of-evidence claim, it concluded that even Perez had not said "shoot, shoot," there was enough evidence to convict under a theory of accountability. *Perez*, No. 1-95-1094, slip op. at 15. Under *Chapman*, the error in the trial judge's consideration of Hodges' out-of-court statement would be deemed harmless only if it is clear beyond a reasonable doubt that its admission did not contribute to Perez's guilty verdict. *Chapman*, 386 U.S. at 23-24. It is unclear whether this heightened standard should apply here, as the Seventh Circuit recently applied the less onerous *Kotteakos* standard even where the appellate court did not conduct a harmless error review. *Lowery v. Anderson*, __ F.3d __, 2000 WL 1222124, at *5. However, because the Confrontation Clause violation in this case was harmless error under either standard, we need not resolve this issue.

An error is not harmless just because the court thinks the petitioner would have been convicted even if the constitutional error had not taken place; the sufficiency of the non-tainted evidence is not the issue. *Kotteakos*, 328 U.S. at 763-65, 767, 775-76. That said, however, when

11

there is *overwhelming* untainted evidence to support the conviction, the error will be deemed harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 256 (1969) (applying *Chapman* harmless error standard to *Bruton* violation in case on direct review).

We conclude that the *Bruton* error committed by the trial judge in this case was harmless. The evidence showed that when the confrontation outside the apartment building escalated, Perez left the scene and returned with an AK-47 assault rifle, which he then gave to Hodges. Less than a minute later Hodges fired into the crowd. In short, in the midst of a gang dispute in which he was one of the main participants, Perez went and found a rifle, returned, and handed it over to the shooter,[2] who shortly thereafter shot the gun into a crowd including the rival gang's members. This evidence more than amply supported Perez's conviction. *See People v. Tate*, 63 Ill.2d 105, 110-11, 345 N.E.2d 480, 483-84 (1976) (upholding accountability conviction where defendant gave weapon to shooter, "escalating the confrontation and precipitating the shooting."); *People v. Ward*, 302 Ill. App, 3d 550, 562-63, 707 N.E.2d 130, 139 (1998) ("To suggest that so-called 'security officers' can shield themselves from culpability by handing over weapons to other gang members and leaving the scene would be to mock the accountability statute."); *see also People v. Roppo*, 234 Ill. App. 3d 116, 599 N.E.2d 974, 981 (1992) (explaining that accountability may be inferred from a defendant's "approving presence at the scene" and conduct showing "a design . . . to aid in the offense.").

---

[2] Perez contends that the trial court improperly relied upon Hodges' out-of-court statement to corroborate this claim as well. But there is no basis to believe that Hodges' statement had any bearing on the trial court's finding that Perez handed the rifle to Hodges; several prosecution witnesses testified that Perez handed the rifle to Hodges, and even Perez said that he brought the rifle to the gangway and approached Hodges (though he claimed that Hodges jerked the gun away from him).

12

Just as importantly, Hodges' out of court statement was not the only source of evidence that Perez told Hodges to shoot; Heather Hummons also so testified, and her testimony regarding that alleged comment was not *directly* impeached (such as by evidence that she had omitted this in her statements to the police). Though one other prosecution witness may have contradicted Hummons' account, it does not appear from the trial judge's extensive findings that she considered Hummons to lack credibility but for Hodges' out-of-court corroboration; in other words, it does not appear that the judge doubted Hummons' testimony on its own merits, only to be convinced of its veracity due to Hodges' out-of-court corroboration. We therefore conclude that the trial judge's consideration of Hodges' out-of-court statements was harmless error. *See, e.g., United States v. Castelan*, 219 F.3d 690, 2000 WL 1030363, at * 6 (7th Cir. 2000) (finding Confrontation Clause violation, but given "the cumulative impact of [non testifying co-defendant's] out-of court statements, and the overall strength of the government's case," that error was harmless beyond a reasonable doubt ).

For the reasons set forth above, the Court dismisses Perez's petition for writ of habeas corpus. Judgment will enter in favor of respondent. However, because Perez has made a "substantial showing of the denial of a constitutional right," albeit a harmless one, we grant him a certificate of appealability under 28 U.S.C. §2253(c)(2) on the issue of whether his constitutional rights were violated by the state trial court's consideration of Hodges' out-of-court statements.

Dated: August 30, 2000

MATTHEW F. KENNELLY
United States District Judge

13